UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WADE CASPER GALLOWAY                    CIVIL ACTION NO. 08-cv-1975

VERSUS                                  JUDGE STAGG

OFFICER MORRISON, ET AL                 MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

Wade Casper Galloway ("Plaintiff") filed this pro se civil rights action against Shreveport Police officers T. G. Morrison and B. D. Lauzon based on allegations of excessive force in connection with Plaintiff's arrest.  Before the court is the Defendants' Motion for Summary Judgment (Doc. 40), to which Plaintiff has filed an opposition.  For the reasons that follow, it is recommended that the motion be granted and that all claims against Defendants be dismissed.

**Summary Judgment Standard**

Under Fed.R.Civ.P. 56(c), a summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

Defendants testify in affidavits about the facts surrounding the arrest.  Plaintiff has filed several pages of materials in opposition to the motion.  The materials include Defendants' responses to discovery requests and some other competent evidence, but Plaintiff has not offered any competing affidavits.  The relevant, competent evidence will be summarized below.

Defendant T. G. Morrison testifies that at the time of the 2008 arrest he was a corporal with the Shreveport Police Department, and he had been trained as a K-9 handler. Thor, a fully-trained police dog, was under his responsibility and control. Shreveport Police dispatch advised Morrison that two black males had just shoplifted an engine stand from an auto parts store on Pines Road.  Dispatch added that the car used in the crime was a green Ford Mustang with Texas tags, and the occupants were considered armed and dangerous. Morrison wrote in his narrative supplement police report (included in Plaintiff's submissions) that dispatch stated the Mustang had been car-jacked in Dallas.

Other officers spotted the Mustang at the Best Value Inn on Monkhouse Drive, parked in front of Room 120.  Morrison testifies that he and Thor arrived at about 9:00 a.m., and Morrison parked his patrol unit where he could see the door of Room 120. Not long afterward, Cpl. Morrison testifies, he saw the door to Room 120 open, and a light-skinned black male left the room and began walking.  The man, Plaintiff, was wearing a black muscle shirt and black pants, and he fit the physical description of one of the suspects in the theft of the engine stand.

Cpl. Morrison testifies that he got out of his patrol unit, with Thor on a six-foot patrol lead, and moved toward the suspect.  He gave verbal commands to Plaintiff to get on the ground and show his hands.  Plaintiff looked at Morrison and Thor and kept walking, eventually turning to walk through a breezeway.  Morrison caught up to Plaintiff in the breezeway and gave him at least three more verbal commands to get on the ground.  Plaintiff looked at Morrison and Thor, stated that he "ain't done nothing," and turned and walked back toward Room 120.

Cpl. Morrison testifies that he realized the suspect could retrieve a weapon if he reentered the motel room.  Morrison therefore gave Plaintiff  one last warning to stop or he would send the police dog.  Plaintiff gave no response and continued to walk toward the open motel room door.  Morrison deployed Thor, who bit Plaintiff on the left calf area.  Plaintiff, who weighed over 200 pounds, backed up to the wall and began pushing on the top of Thor's

head.  Thor was having difficulty getting Plaintiff to the ground, so Morrison and other officers assisted.

Officer B.D. Lauzon testifies that he was in the motel manager's office viewing security video of the Mustang's arrival at the motel when he saw, on the live video feed, Plaintiff exit the motel room.  Lauzon went to the scene near room 120, where he saw Cpl. Morrison give verbal commands to Plaintiff, and Plaintiff did not comply.  Lauzon also saw Morrison release Thor, which Lauzon says brought Plaintiff to the ground.  Lauzon testifies that Plaintiff, while on the ground, continued resisting to the utmost.

Lauzon testifies that he gave loud, verbal commands to Plaintiff to stop resisting, but Plaintiff did not comply.  Plaintiff attempted to put his right hand down by his waist and, because Lauzon believed the suspect to be armed, he grabbed Plaintiff's arm and put it above Plaintiff's head.  He also did a shoulder pin to keep Plaintiff from reaching weapons. Plaintiff continued to resist while other officers tried to handcuff him, so Lauzon gave Plaintiff "two distractionary strikes to his back," which proved ineffective. Lauzon then "gave distractionary strikes to his head."  Those strikes allowed the other officers to get Plaintiff's arms to his back and in handcuffs.

The Shreveport Fire Department arrived and gave first aid to Plaintiff for the dog bite wounds to his left leg. The wounds are shown in the color photographs that are filed as manual attachments to Doc. 42. The Fire Department also gave first aid to Officer Lauzon for scratches to his arms and hands.  Plaintiff was later taken to the LSU Medical Center for

additional treatment.  The medical records attached to Plaintiff's submissions show that the wounds were diagnosed as abrasions, mild to moderate in severity, and Plaintiff was given medication to prevent infection. There is no evidence that sutures or pain medication were required. Plaintiff's calf was kept cleaned and dressed by jail medical staff, and the wounds were noted as "healed" less than a month later.

The discovery responses and police reports indicate that no weapons were actually found on Plaintiff or in the motel room.  The owner of the Mustang later admitted that his car had not been taken at gunpoint. Rather, the car was stolen when the owner foolishly left it unattended and running at a gas station.  The owner lied because he believed he could not collect on his insurance under the actual facts.

**Excessive Force--Fourth Amendment**

Claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen are analyzed under the Fourth Amendment and its "reasonableness" standard.  Graham v. Connor, 109 S.Ct. 1865 (1989).  Plaintiff specifically denies that he is asserting a claim that the officers employed deadly force, which is analyzed under a different standard, and none of the circuit courts that have reviewed similar cases involving the use of a trained police dog have analyzed the claim as presenting a deadly force issue.  See Thomson v. Salt Lake County, 584 F.3d 1304, 1316 n.4 (10th Circuit 2009) (collecting cases). There is also nothing about the context in which the police dog was used in this case that would warrant the assessment of the claim under a deadly force standard.

The <u>Graham</u> reasonableness inquiry "is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Id</u>. 109 S.Ct. at 1872 (citations and quotations omitted). The Fifth Circuit states that a Plaintiff asserting such a claim "must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." <u>Flores v. City of Palacios</u>, 381 F.3d 391, 396 (5th Cir. 2004). <u>See also</u> <u>Peterson v. City of Fort Worth</u>, 588 F.3d 838, 846 (5th Cir. 2009).

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical operation, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 109 S.Ct. at 1872. And the court must determine whether the force was excessive "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Peterson</u>, 588 F.3d at 846, quoting <u>Graham</u>.

**Qualified Immunity**

Defendants argue that Plaintiff has not created a genuine issue of material fact under the <u>Graham</u> standard. They also raise the doctrine of qualified immunity. It protects government officials from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan,  129 S.Ct. 808, 815 (2009).

Even if the court considers the officer's use of force a violation of the Fourth Amendment, qualified immunity may bar the claim if the force was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred. An officer's use of force must be objectively unreasonable to violate the Fourth Amendment, but an officer's violation can still be objectively reasonable if the contours of the constitutional right at issue were sufficiently unclear in the particular situation at issue that it may not have been clear to a reasonable officer at the scene that his conduct was unconstitutional. The central concept is that the law must have been sufficiently clear that a reasonable officer faced with that particular situation had fair warning that the level of force used violated constitutional rights. Bush v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008); Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004) (en banc) .

"The plaintiff's evidentiary assertions –  but not mere allegations – are taken as true in the court's evaluation of qualified  immunity." Terry v. Hubert, __ F.3d __, 2010 WL 2471834 (5th Cir. 2010).  Each defendant who raises immunity is entitled to a separate examination. It is improper for a court to analyze a group of defendants' actions collectively in assessing qualified immunity. Meadours  v. Ermel, 483 F.3d 417, 421-22 (5th Cir.2007).

**Analysis**

The summary judgment record shows that Cpl. Morrison was presented with a suspect whom he had been advised was armed and dangerous.  The suspect refused to comply with several direct orders to get down and was attempting to avoid arrest by reentering the motel room where, Morrison worried, the suspect might obtain a weapon.  The officers also did not know how many other people might be inside the room.  Morrison had to make a decision as Plaintiff was about to reenter the motel room.  He could attempt to subdue and arrest Plaintiff at that moment or allow him to reenter the motel room.  If Plaintiff reentered the room, the arrest would have become more complicated and potentially more dangerous.  The police reports show that the officers, before Plaintiff came out of the room, were already considering obtaining a warrant and calling a special response team.

When the information Cpl. Morrison possessed - an allegedly armed and dangerous felony suspect who has refused to comply with several orders and is about to reenter a motel room - is considered, the court must conclude that Morrison' actions were reasonable under the circumstances. Force was used, but it was a reasonable amount of force that was deployed in an effort to effect an arrest of a suspect who was attempting to avoid arrest, and the force prevented the situation from escalating in danger to officers, the suspect and the public.  The same is true as to Officer Lauzon.  He was faced with a suspect who was struggling with police officers and a dog, was feared to be armed and dangerous, and made a move while resisting officers that Lauzon reasonably feared was an effort to gain a weapon.  Lauzon

employed strikes to the back and head that apparently left no substantial injury and quickly achieved the purpose of allowing the other officers to handcuff Plaintiff and end the physical encounter.

Plaintiff responds that he posed no serious threat to the officers because he was merely verbally noncompliant, he possessed no weapons, and was surrounded by several officers with no escape possible.  He asserts that it was unavoidable that he would have eventually been arrested without the need to use force.  The officers did not know, however, that Plaintiff did not possess a weapon.  Rather, they had been told that the suspect was armed and dangerous and had car-jacked the Mustang.  And the mere fact that several officers were in the area and had it essentially surrounded does not mean the suspect may walk around and ignore orders until he simply gets tired and gives up.  Officers may employ a reasonable amount of force to arrest a suspect after the suspect has refused to comply with several direct orders to surrender himself in a peaceful fashion.

Plaintiff also argues that, under his interpretation of Shreveport Police Department policy, the use of a canine was not warranted in this situation.  He also argues that it was improper under department guidelines for Officer Lauzon to strike him in the head and back because the guidelines warn to avoid these areas.  Plaintiff is presenting a claim under 42 U.S.C. § 1983, which requires that he show a defendant violated federal laws or the Constitution.  The statute does not permit a remedy for the mere violation of police department policy or even state law. Sylvester v. Cain, 311 Fed.Appx. 733, *2 (5th Cir. 2009)

("violations  of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983"); and <u>Brown v. Williams</u>, 124 Fed.Appx. 907, 909 (5th Cir. 2005) ("a mere violation of state law does not state a constitutional claim under 42 U.S.C. § 1983"). Plaintiff also asserts that he was not offering any resistance at the time Lauzon struck him, but Lauzon's testimony to the contrary has not been contested by competent summary judgment evidence.

The summary judgment record presents facts that show that both officers acted reasonably under the circumstances.  They are entitled to summary judgment and the dismissal of all claims against them.

Accordingly,

**IT IS RECOMMENDED** that the Defendants' **Motion for Summary Judgment (Doc. 40)** be **granted** and that all claims against all Defendants be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of July, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE